**Ron L. Sayer, OSB No. 951910**
rsayer@gattilaw.com
**James M. Healy, OSB No. 123403**
jhealy@gattilaw.com
The Gatti Law Firm
235 Front St. SE, Ste. 200
Salem, Oregon, 97301
Telephone: 503-363-3443
Fax: 503-371-2482

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **MISTY L. CASTILLO**, as Personal Representative of the **ESTATE OF ARCADIO CASTILLO, III**,<br><br>Plaintiff,<br><br>v.<br><br>**NATHAN BUSH** and **CITY OF SALEM**, A municipal corporation<br><br>Defendants. | Case No. 6:22-cv-00684-MTK<br><br><br>**PLAINTIFF'S MOTIONS *IN LIMINE*** |

Plaintiff moves the Court *in limine* for an Order on the following evidentiary matters:

## Motion No. 1
### Limiting Rehabilitation of Venire Persons During or Following *Voir Dire*.

Plaintiff respectfully requests the Court to limit rehabilitation of venire persons during or following *voir dire* by counsel.

Several "hot-button" issues are implicated in this case – mental health, alcohol and drug use, police practices, tort cases, and damages for death, among them.

To empanel an impartial jury, Plaintiff asks the Court to give great weight to the jurors' initial responses in *voir dire*, and refrain from leading jurors to declare impartiality when that might

Page 1 – PLAINTIFF'S MOTIONS *IN LIMINE*

not actually be the prospective juror's disposition.  The Oregon Supreme Court has recently commented on the detrimental effect juror rehab casts upon the goal of impaneling a fair and impartial jury:

> "[J]uror rehabilitation 'gets little support from social science research as a method to ensure impartial juries' …  Juror 'rehabilitation' is ineffective at best and likely detrimental to the court's goal of ensuring that all jurors are fair and impartial.
>
> ***
>
> "As one study explained, '[i]n a typical juror rehabilitation, the judge asks jurors individually, in front of the remaining panel, whether they can set aside bias they have already confessed and be fair.  Social science evidence strongly [suggests] … that jurors confronted with this question from the bench almost invariably say, yes.' …  Those results support this court's conclusion in *Lambert* that a juror's unprompted statements regarding bias must be given 'much greater weight' than statements made after the court or counsel attempt to 'rehabilitate' the juror by asking whether the juror can set aside her bias and be fair… Posing close-ended questions to 'rehabilitate' a juror is an ineffective way to discern a juror's actual biases and achieve the goal of selecting a fair and impartial jury."

*State v. Villeda*, 372 Or 108, 117-18, 546 P3d 268, 274-75 (2024) (*en banc*).

There is little doubt federal courts recognize the same fundamental right to an impartial jury.  A juror should be removed if there is a showing of actual or implied bias.  *United States v. Gonzalez*, 214 F3d 1109, 1111 (9th Cir 2000).  "Actual bias" is the existence of a state of mind that leads to an inference that the person will not act entirely impartial.  *Id*. at 1112.  Actual bias can be revealed through a juror's express answers during *voir dire*, and it can also be revealed by circumstantial evidence during questioning.  *Id*. at 111-12.  While it is within a trial judge's discretion to disregard a prospective juror's initial responses suggesting bias if that juror later "commits to lay aside those feelings and reach a verdict based on the evidence presented and the court's instructions," *Image Tech Servs., Inc. v. Eastman Kodak Co.*, 125 F3d 1195, 1220 (9th Cir 1997), the authority cited above reveals such "commitments" after a juror has revealed bias frustrate the parties' common goal of impaneling a fair and impartial jury.

/ / /

Page 2 – PLAINTIFF'S MOTIONS *IN LIMINE*

"Implied bias" is present "in those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Gonzalez*, 214 F3d at 1112. The inquiry is an objective one, asking "whether an average person in the position of the juror in controversy would be prejudiced," *id*., "thus, even if a juror states or believes that she can be impartial, the court may find implied bias based on circumstances." *Id*. Some common examples of implied bias are where a juror or a close relative of the juror has been personally involved in a situation involving similar a similar fact pattern to the case at issue, *see, e.g. United States v. Eubanks*, 591 F2d 513 (9th Cir 1979) (implied juror bias required reversal of conviction where juror sat on heroin distribution case without disclosing that his sons were serving prison time for heroin related crimes), and where a juror has an employee/employer or other similar relationship with one of the parties. *See, e.g., United States v. Allsup*, 566 F2d 68 (9th Cir 1977) (implied juror bias required reversal where two jurors worked for the bank the defendant allegedly robbed, even though they state they could decide the case fairly). In such circumstances, and regardless of the putative jurors' assertions that their personal experience or relationship will not affect their judgment, "the juror in question would be lacking the quality of indifference which, along with impartiality, is the hallmark of an unbiased juror." *Dyer v. Calderon*, 151 F3d 970, 982 (9th Cir 1988).

**Motion No. 2**
**Exclude Misty Castillo 911 Call and Screaming Heard on Nest Camera.**

For the reasons fully briefed in Plaintiff's Objection to Defendants' Exhibit 201, Plaintiff moves to exclude any audio that contains Misty Castillo screaming.

Plaintiff's proposed Exhibit 1 also contains audio in which Misty Castillo's scream can be heard. To the extent the Court grants Plaintiff's request to exclude the 911 audio call and rules the

audio of Misty Castillo's screaming is excluded, Plaintiff respectfully requests an Order permitting Plaintiff to modify Exhibit 1 to omit the audio of Misty Castillo's screaming.

**Motion No. 3**
**Exclude Photos and Other Evidence of Misty Castillo's Injuries.**

For the reasons fully briefed in Plaintiff's Objection to Defendants' Exhibits 208 and 209 Plaintiff moves for an Order excluding photographs of Misty Castillo's injuries taken July 9th/10th, 2021 by the Oregon State Police.  Furthermore, Plaintiff moves for an Order excluding any witness testifying about Misty Castillo's injuries beyond Defendant Bush.  Because the objective reasonableness of Defendant Bush's resort to lethal force against Arcadio Castillo III is based on an objective evaluation of all information known to Defendant Bush at the time be resorted to lethal force, any other witness testimony regarding Misty Castillo's injuries is irrelevant, and risks danger of unfair prejudice and misleading the jury.  Fed. R. Evid. 403.

**Motion No. 4**
**Exclude Evidence of ACIII's Prior Arrests, Convictions, and/or Incarceration.**

Plaintiff moves for an Order excluding evidence regarding any of Arcadio Castillo III's arrests, convictions, and/or incarceration pursuant to Fed. R. Evid. 402, 403, 404, and 608.

Defendant Bush testified in his deposition that he was unaware of Arcadio Castillo III's criminal history or any prior calls for service at the Castillo residence when Defendant Bush dispatched to the 911 call.  Therefore, Arcadio Castillo III's prior criminal history has no relevance to the issues for the jury's determination.  Fed. R. Evid. 402.

Moreover, because Arcadio Castillo III cannot testify at trial, the evidence is not admissible for his character for truthfulness or untruthfulness pursuant to Fed. R. Evid. 608(b).  Any such evidence would be impermissible character evidence pursuant to Fed. R. Evid. 404(b)(1) and would present a danger of unfair prejudice.  Fed. R. Evid. 403.

/ / /

## Motion No. 5
## Exclude Evidence of Misty Castillo's Prior Restraining Order Filings
## Against Arcadio Castillo III.

Plaintiff moves for an Order excluding questioning, reference, and/or argument regarding the 2020 restraining order proceedings Misty Castillo initiated and subsequently dismissed against Arcadio Castillo III pursuant to Fed. R. Evid. 402, 403, and 404.

Misty Castillo was questioned at length during her deposition regarding a July 2020 Petition for Restraining Order to Prevent Abuse she filed against Arcadio Castillo III, and other related documents Misty Castillo filed seeking to dismiss the restraining order.  In the petition Misty Castillo reports that her son, Arcadio Castillo III "punched," "kicked" and "scratched" Misty while he was "intoxicated and high."  Between July 2020 and October 202 Misty Castillo filed further documents with the Court seeking to have the restraining order removed.

Questions regarding the restraining order and other related filings are not relevant to any issue in dispute.  Therefore, any questions regarding the restraining order and related documents should be excluded pursuant to Fed. R. Evid. 402.  To the extent Defendants can articulate some relevance, danger of unfair prejudice would significantly outweigh any marginal relevance, and the topic should be excluded pursuant to Fed. R. Evid. 403.

## Motion No. 6
## Exclude Evidence of Arcadio Castillo III's Use of Racial Slurs and
## Other Derogatory Terms.

Plaintiff moves for an Order excluding any evidence that Arcadio Castillo III used racial slurs or other derogatory terms on the night of the shooting or any time prior, pursuant to Fed. R. Evid. 402, 403, and 404.  Defendants have indicated in their lay-witness statements that they intend to elicit testimony that on the night he was killed Arcadio Castillo III called his parents the N-word and "bitch."  (EFC No. 147).  Moreover, Misty Castillo was asked in her deposition "[d]o you recall at any time the allegation that your son had referred to Mr. Sheridan using the N-word?"

Page 5 – PLAINTIFF'S MOTIONS *IN LIMINE*

Such evidence is not relevant to any of Plaintiff's claims and should be excluded pursuant to Fed. R. Evid. 402.

The evidence would constitute improper character evidence in Defendants' attempts to prove Arcadio Castillo III's racist or poor character, yet such evidence would not be admissible character evidence under Fed. R. Evid. 404.

Finally, to the extent such evidence has any plausible relevance, the evidence is highly inflammatory, and the danger of unfair prejudice would significantly outweigh any probative value. Accordingly, such evidence should be excluded pursuant to Fed. R. Evid. 403.

**Motion No. 7**
**Exclude Reference to Grand Jury, Including Argument or Evidence that the Grand Jury's Finding Establishes that Defendant Bush's Conduct was Lawful or Legally Justified.**

Plaintiff moves for an Order excluding any reference to the Marion County grand jury proceedings related to Defendant Bush's shooting of Arcadio Castillo III, as well as any argument that the grand jury's findings in any way establish that Defendant Bush acted legally or was justified in shooting and killing Arcadio Castillo III. Such evidence is irrelevant and creates the danger of unfair prejudice. Fed. R. Evid. 402, and 403.

The Marion County District Attorney's Office conducted grand jury proceedings regarding Defendant Bush's shooting of Arcadio Castillo III. Defendant Bush, Misty Castillo, and Arcadio Castillo Jr., among other witnesses, were called to testify before the grand jury. To date Defendants have produced the grand jury witness testimony transcripts, but no other records regarding the grand jury proceedings.

After the grand jury proceedings, the Marion County District Attorney's office transmitted a press release declaring that "a Marion County Grand Jury unanimously found that Salem Police Officer Nathan Bush was justified in using deadly force against Arcadio Castillo III on July 9, 2021." On this record, the grand jury's conclusion, however, may not be so straight forward.

Page 6 – PLAINTIFF'S MOTIONS *IN LIMINE*

In a general sense, the Marion County grand jury proceedings were separate proceedings from the present matter and considered different issues against a different legal standard than that applicable to the present matter. To be sure, the grand jury proceedings related to potential criminal charges, which require proof of a suspect's criminal intent. In the present matter, Plaintiff's Fourth Amendment claim requires objective (as opposed to subjective) evidence. Thus, because of Plaintiff's pending civil claims require the same showing as that required during grand jury proceedings, comparing the grand jury results to the present matter would be an improper apples to oranges comparison that would pose a risk of misleading the jury. Fed. R. Evid. 403.

More specifically, ORS 132.430 dictates the disposition of a grand jury indictment: "When a person has been held to answer a criminal charge and the indictment in relation thereto is not found 'a true bill,' the indictment must be indorsed 'not a true bill,' which indorsement must be signed by the foreman and filed with the clerk of the court …" Alternatively, "[i]n the case of an indictment not found 'a true bill' against a person who has not been held to answer a criminal charge, the indictment must be destroyed by the grand jury." In the present matter, we do not know the Grandy Jury's disposition with respect to the indictment, so it would be improper to equate the grand jury's actions to a justification for Defendant Bush's lethal force against Arcadio Castillo III.

For all of those reasons, the grand jury's conclusions are irrelevant and should be excluded. Fed R. Evid. 402.

Finally, even assuming the grand jury's conclusions were relevant, the probative value would be substantially outweighed by the danger of unfair prejudice. In similar situations, where an independent investigatory body is tasked with considering issues similar to those which the jury in a civil claim is to consider, the Ninth Circuit has held those independent investigatory findings pose a great risk of prejudice to the party against whom findings were made. *Gilchrist v. Jim*

Page 7 – PLAINTIFF'S MOTIONS *IN LIMINE*

*Slemons Imports, Inc.*, 803 F3d 1488, 1500 (9th Cir 1986). "A jury might find it difficult to evaluate independently evidence of [the plaintiff's allegations] after being informed that the EEOC has already examined the evidence and found a violation." *Id*. *See also Carvajal v. Pride Indus.*, 649 Fed Appx 618 (9th Cir 2016) ("[T]he district court permissibly concluded that the report was 'overly prejudicial' and 'basically takes aware the jury's role as fact finders.'"). For these reasons, even if the Grand Jury's proceedings were relevant, they should be excluded pursuant to Fed. R. Evid. 403.

### Motion No. 8
### Reference to Grand Jury Testimony Should Be Characterized as "Sworn Testimony In A Prior Proceeding Related to this Case."

As noted in Plaintiff's Motion *in Limine* No. 7, the Marion County District Attorney's office conducted grand jury proceedings related to Defendant Bush's shooting of Arcadio Castillo III. Defendants have indicated they will call Misty Castillo as a witness, and that Misty will testify "consistent with her prior testimony before the Marion County grand jury and her deposition in this case."

Because the grand jury proceedings are irrelevant, to the extent parties question any witness regarding the witnesses' prior grand jury testimony, instead of referencing "grand jury testimony," reference should be made to "sworn testimony in a prior proceeding related to this case." Such a reference would help the jury understand the prior testimony was under oath but would protect against the jury learning of the grand jury proceedings, which may cause the jury to speculate at to the outcome of the grand jury proceedings. Fed. R. Evid. 401, 402, and 403.

/ / /

/ / /

/ / /

Page 8 – PLAINTIFF'S MOTIONS *IN LIMINE*

**Motion No. 9**
**Exclude Evidence or Argument that Because Edged Weapons and/or Knives are Generally Dangerous Defendant Bush was Justified Using Lethal Force Simply Because Arcadio Castillo III Possessed a Knife; Exclude Evidence or Argument Regarding "Tueller Drills" and the "21 Foot Rule."**

Plaintiff moves for an Order excluding any argument or testimony to the effect that, because edged weapons or knives are generally "dangerous" or "deadly" weapons, Arcadio Castillo III's act of simply possessing a knife justified Defendant Bush's use of lethal force.  In the present matter Defendant Bush's stated justification for using lethal force against Arcadio Castillo III is and always has been because Arcadio Castillo III charged Defendant Bush with a knife. Defendant Bush testified in his deposition that had Arcadio Castillo III simply been standing, holding the knife, or had simply refused orders to drop the knife, Defendant Bush would not have resorted to lethal force.  Defendant Bush's agreement on this point is confirmed by clearly established case law, which holds that a subject's act of simply possessing a dangerous weapon, standing alone, does not justify lethal force.  *Harris v. Roderick*, 126 F3d 1189, 1204 (9th Cir 1997) (explaining "[l]aw enforcement officials may not kill suspects who do not pose an immediate threat to their safety or the safety of others simply because they are armed."); *Estate of Lopez v. Gelhaus*, 871 F3d 998 (9th Cir 2017); *George v. Morris*, 736 F3d 829 (9th Cir 2013);  *Hayes v. County of San Diego*, 736 F3d 1223 (9th Cir 2013);  *Glenn v. Washington County*, 673 F3d 864 (2011).

Additionally, Plaintiff moves for an Order precluding any lay or expert testimony or argument regarding "Tueller Drills" or the "21 Foot Rule" pursuant to Fed. R. Civ. P. 26(2)(B) and Fed. R. Ev. 403 and 702.  The "21 Foot Rule" originated from a 1983 article by Lt. Dennis Tueller in SWAT Magazine called "How CLOSE is TOO CLOSE?"  In the article Tueller compares the time it takes an individual to sprint 21 feet against the time it takes an individual to draw a holstered firearm and concludes that because it takes equal time to do both tasks, anyone with a knife within 21 feet of an officer poses a lethal threat to that officer.  Since the time of Tueller's article, the "21

Foot Rule" has become dogmatic amongst law enforcement agencies. Indeed, Salem Police Lieutenant Lance Diede endorsed his belief in the "21 foot rule" during his deposition.

At its core the "21 foot rule" is a concept based on human reaction times. Thus, if it were the proper subject of any testimony, it would necessarily be the subject of expert testimony. To the extent Defendants want to present evidence regarding human reaction times they would be required to do so through an expert witness with the requisite training, knowledge, and experience in human reaction times, such as a cognitive psychologist. Defendants have not, however, submitted any expert disclosures providing qualified expert opinion on human reaction times.

Finally, evidence related to the "21 foot rule" would subvert the jury's role in analyzing the objective reasonableness of Defendant Bush's decision to employ lethal force against Arcadio Castillo III. *Graham v. Connor*, 490 US 386, 109 S Ct. 1865 (1989). As noted from the cases cited above, that Arcadio Castillo III was armed with a knife when Defendant Bush shot him is not dispositive. *Glenn*, 673 F3d at 873 (stating as much, and explaining "otherwise, that a person was armed would always end the inquiry."). However, evidence or argument related to the "21 Foot Rule" would seek to make that fact dispositive. For that reason, any such testimony or argument would pose the danger of unfair prejudice, confusion of the issues, and misleading the jury as to its proper considerations under the *Graham* factors. Accordingly, argument or evidence related to the "21-foot-rule" should be excluded pursuant to Fed. R. Evid. 403.

**Motion No. 10**
**Exclude Photos Depicting the Castillo Residence Other Than Photographs**
**of the Exterior, Front Entry, Living Room, and Hallway.**

Plaintiff moves for an Order excluding photographs of the Castillo residence beyond those photographs depicting the exterior of the Castillo residence, the entry to the residence, the living room, and the hallway connected to the living room. Photographs of rooms within the Castillo

residence that are not of the exterior, front entryway, living room, and hallway off the living room are irrelevant.  Fed. R. Evid. 402.

**Motion No. 11.**
**Exclude results of ACIII's toxicology report.**

Plaintiff moves for an Order excluding the results of any toxicology report for Arcadio Castillo III.  The parties do not dispute that when Defendant Bush arrived to the Castillo residence on July 9th, 2021, that Misty Castillo had reported to authorities that her son was intoxicated and under the influence of marijuana.  Any toxicology report for Arcadio Castillo III would not be relevant to any of the issues for the jury to determine.  Fed. R. Evid. 402.

**Motion No. 12.**
**Exclude Evidence that Defendant Bush's Perception of the Danger, Imminence, or Immediacy of Danger as Being "Reasonable" or "Accurate."**

Plaintiff moves for an Order to preclude witnesses or counsel from commenting on the accuracy or reasonableness of Defendant Bush's stated perceptions pursuant to Fed. R. Evid. 608 and 609.

Defendant Bush has testified to the events of July 9, 2021, and the reasons for his decision to use lethal force against Arcadio Castillo III.  Any testimony from witnesses that Defendant Bush's perceptions were "reasonable" or "accurate" would constitute impermissible vouching. Witnesses, including expert witnesses, cannot vouch or bolster the credibility of other witnesses, nor testify about the reasons for a person's decision, or what a person may have been thinking in a given moment.  *US v. Barnard*, 490 F2d 907, 912-13 (9th Cir 1973).  Such testimony invades the province of the jury and is unhelpful and improper. *Id*.

/ / /

/ / /

### Motion No. 13
### Exclude Evidence of Defendant Bush's or Any Other Salem Police Department Officer's Commendations, Honors, Medals, and/or Awards.

Plaintiff moves for an Order to exclude evidence or reference to any commendations, honors, medals, or awards that Defendant Bush or any other Salem Police Department officer received, pursuant to Fed. R. Evid. 402, 403, 404, and 801.

Defendant Bush received a "medal of honor" from the Salem Police Department in relation to his shooting of Arcadio Castillo III. Evidence of this, or any other awards to Defendant Bush or other Salem Police Department officers are irrelevant and create a risk of unfair prejudice. Fed. R. Evid. 402, and 403. Further, this evidence would constitute impermissible character evidence, and hearsay. Fed. R. Evid. 404, 801, and 802. *See US v. Nazzaro*, 889 F2d 1158, 1168 (1st Cir 1989) (affirming a trial court's exclusion of an officer's commendations, holding such evidence was not "evidence of a pertinent trait of character" but instead was "classic hearsay" and inadmissible for that reason).

### Motion No. 14.
### Exclude Evidence of Defendant Bush's and Any Other Salem Police Department Officers' Injuries Incurred in the Course of Employment.

Plaintiff moves for an Order excluding any evidence regarding injuries to Defendant Bush or other officers, as well as any reference regarding the general "dangers" law enforcement officers face. The subjective backgrounds of Defendant Bush and how such may have affected him in his interaction with Arcadio Castillo III is irrelevant since Defendant Bush's decision to use lethal force against Arcadio Castillo III is to be evaluated from the perspective of an objective law enforcement officer. Fed. R. Evid. 402.

Moreover, this type of evidence, and any tenuous probative value that it might have, would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and potential for misleading the jury. Fed. R. Evid. 403. In all excessive force cases, a predominant

theme to be overcome by the plaintiff is the jury's concern for the safety of law enforcement officers who are sworn to protect the public, which includes members of the jury.  When one of those officers has been previously injured in the course of their duties, it is overwhelmingly likely such evidence will evoke empathy of jurors and create a substantial risk the jury will consider evidence related to the officer's subjective intent in assessing the objective reasonableness of the officer's conduct.

**Motion No. 15**
**Exclude Evidence of the Personal Financial Circumstances of Defendant Bush, Any Argument that Defendant Bush Will Be Personally Liable to Pay Any Verdict Rendered Against Him, or Any Argument a Verdict Will Adversely Effect Defendant Bush's Employment.**

Plaintiff moves for an Order precluding any argument or evidence that Defendant Bush would be personally responsible for paying any verdict rendered against him on Plaintiff's Fourth Amendment excessive force claim, or that a verdict in Plaintiff's favor would have adversely affect Defendant Bush's employment with Salem Police Department.  Such arguments or evidence would be irrelevant to the issues for the jury and would create the danger of unfair prejudice.  Fed. R. Evid. 402 and 403.

**Motion No. 16**
**Exclude Evidence and Argument that a Verdict for Plaintiff Will be a Burden on Taxpayers.**

Plaintiff moves for an Order to exclude evidence or argument regarding the financial condition of the City of Salem and/or the Salem Police Department, and any argument that directly or indirectly implies that taxpayers will be burdened, or taxes increased by a verdict in favor of Plaintiff.  Such argument or evidence is not relevant.  Fed. R. Evid. 402.  *See, also* UCJI 16.01 and *Brooks v. Bergholm*, 256 Or 1, 4-6 (1970) (ability to pay irrelevant to juror's determination of compensatory damages).  Such argument or evidence would also pose a danger of unfair prejudice. Fed. R. Evid. 403.

Page 13 – PLAINTIFF'S MOTIONS *IN LIMINE*

**Motion No. 17.**
**Exclude Evidence of Reasons Defendant Bush Became a Law Enforcement Officer.**

Plaintiff moves for an Order excluding any evidence as to the reasons Defendant Bush became a law enforcement officer. Such evidence would be irrelevant to the jury's consideration. Fed. R. Evid. 402. Further, such evidence, would be aimed to influence the jury to return a verdict on an improper basis. Fed. R. Evid. 403.

**Motion No. 18**
**Exclude Evidence and Argument that Salem Police Department or Defendant Bush Express Sympathy to the Castillo Family for Their Loss.**

Plaintiff moves for an Order excluding any representation from counsel or testimony from any witness that Defendant Bush and/or the Salem Police Department express sympathy to the Castillo family for the loss of Arcadio Castillo III. Such representations and testimony would be irrelevant to the jury's consideration. Fed. R. Evid. 402. Further, such representations or testimony would only be aimed to influence the jury to return a verdict on an improper basis. Fed. R. Evid. 403.

**Motion No. 19**
**Exclude Testimony of Defense Expert Brian Kennedy Offered or Framed in a Manner Designed to Bolster the Credibility of Another Witness and for Which the Facts and Data Supporting the Opinions Have Not Been Disclosed.**

Plaintiff moves for an Order excluding Defense Expert Brian Kennedy from testifying in a manner intended to bolster the credibility of other Defense experts pursuant to Fed. R. Civ. P. 26(B) and Fed. R. Evid. 701 and 702.

On page 13 of Mr. Kennedy's expert disclosure (ECF No. 142-1) he comments "Overall, the work produced by Englert Forensic Consultants was very thorough and detailed. The report was consistent with and supportive of my observations." As a threshold matter, Mr. Kennedy does not disclose what of Mr. Englert's "work" he considered to be very thorough and detailed, so we

have no idea what the facts or underlying data is to this expert "opinion" Mr. Kennedy holds. Fed. R. Civ. P. 26(B).

Mr. Kennedy, on Page 14 of his disclosure, then goes on to state "With a few variations, I concur with the three animations developed by Mr. Englert through *Trial Ready Pro*. The animations conform to the bloodstain patterns, physical evidence and the autopsy report provided in this matter." Mr. Englert, however, has not disclosed any animations with his expert report, filed December 19, 2023 (ECF No. 62-1) and February 6, 2024 (ECF No. 82). Defendant's animation videos were disclosed in conjunction with Defense experts Rocky Edwards and Heather Heider (ECF No. 142-2 pp 23-25). Thus, what specifically Mr. Kennedy references when he denotes the animations developed by Mr. Englert remains uncertain.

Assuming Mr. Kennedy was referencing the animations disclosed with Defense Experts Rocky Edwards and Heather Heider, Mr. Kennedy's provides no explanation for how the animations "conform to the bloodstain patterns, physical evidence and the autopsy report provided in this matter." Nor does Mr. Kennedy discuss the "few variations" he references in relation to the video to which he does not agree. Accordingly, Mr. Kennedy's opinion adopting Mr. Englert's opinions and the three animations Defendants have submitted fails to identify the facts and data upon which the opinions are based, as required pursuant to Fed. R. Civ. P. 26(B). For that reason, Mr. Kennedy's wholesale adoption should be excluded.

### Motion No. 20
### Exclude Evidence of Plaintiffs' or Decedent's Receipt of Public Assistance from Medicaid, OHP, Social Security, or Any Other Form of Governmental Assistance.

Plaintiff moves for an Order excluding any argument or evidence that anyone in the Castillo family received public assistance. Such argument or evidence, at least on Plaintiff's state law claims, are inadmissible pursuant to ORS 31.580(2). Further, such argument or evidence is

Page 15 – PLAINTIFF'S MOTIONS *IN LIMINE*

irrelevant to Plaintiff's Section 1983 claims.  Fed. R. Evid. 402.  Finally, such evidence would pose a danger of misleading the jury and unfair prejudice.  Fed. R. Evid. 403.

### Motion No. 21
### Exclude Evidence and Argument that Defendant Bush Suffered Emotional Distress, Upset, Worry, or that he Lost Time from Work.

Plaintiff moves for an Order excluding any argument or evidence that Defendant Bush suffered emotional distress, upset, worry, or that he was held off work because of his shooting of Arcadio Castillo III.  Such evidence would be irrelevant.  Fed. R. Evid. 402.  Further, such evidence would only be aimed to influence the jury to return a verdict on an improper basis.  Fed. R. Evid. 403.

### Motion No. 22
### Exclude Evidence and Argument that there is a "War on Cops" or "War on Police."

Plaintiff moves for an Order excluding any arguments or witness testimony that there is a societal "war against police," or other comments to that effect.  Such comments would be improper, not based upon evidence, and would seek to influence the jury to return a verdict on an improper basis.  Fed. R. Evid. 402 and 403.

Dated this 21st day of January, 2025

/s/ James M. Healy
James M. Healy, OSB No. 123403
Of attorneys for Plaintiff

Page 16 – PLAINTIFF'S MOTIONS *IN LIMINE*

CERTIFICATE OF SERVICE

I hereby certify that on the __21st__ day of January, 2025, I served a true and correct copy of the foregoing PLAINTIFF'S MOTIONS *IN LIMINE* on the following:

Andrew D. Campbell
Elayna Z. Matthews
Heltzel Williams PC
PO Box 1048
Salem, OR 97308
E-mail: andrew@heltzel.com
        elayna@heltzel.com

Daniel B. Atchison
City of Salem Legal Department
PO Box 14300
Salem, OR 97309
E-mail: datchison@cityofsalem.com

I further certify that said copies were:

_____     Mailed in a sealed envelope, via US Postal Service

__XX__     Transmitted via e-mail

__XX__     Transmitted via electronic means (CM/ECF)

_____     Hand Delivered

Dated this __21st__ day of January, 2025.

_s/ James M. Healy_____
Ron L. Sayer, OSB #951910
James M. Healy, OSB #123403
Of Attorneys for Plaintiff
E-mail: jhealy@gattilaw.com

Page 17 – PLAINTIFF'S MOTIONS *IN LIMINE*