Andrew D. Campbell, OSB #022647
Email: andrew@heltzel.com
Heltzel Williams PC
PO Box 1048
Salem, OR 97308
Phone: (503) 585-4422
Fax: (503) 370-4302
        Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| **MISTY CASTILLO**, as Personal Representative of the **ESTATE OF ARCADIO CASTILLO, III**, | ) ) ) | Case No. 6:22-cv-00684-MTK |
| | ) ) | **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO EXPERT WITNESSES** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| **NATHAN BUSH** and **CITY OF SALEM**, a municipal corporation, | ) ) ) | |
| Defendants. | ) ) | |

Defendants respectfully offer this response to Plaintiff's objections to Defendants'

Expert Witnesses. Defendants agree that FRE 702 provides that expert testimony is

admissible when: 1) the witness is sufficiently qualified as an expert by knowledge, skill,

experience, training, or education; 2) the scientific, technical, or other specialized

knowledge will help the trier of fact understand the evidence or determine a fact in issue;

3) the testimony is based on sufficient facts or data; 4) the testimony is the product of

reliable principles and methods; and 5) the witness has reliably applied the principles and methods to the facts of the case.

When an expert meets the minimum threshold for their opinion to be admissible, they may testify and the jury decides on the weight afforded that testimony. *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010). The examination of the admissibility of expert testimony is a "flexible one" where "shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564 (*citing Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579, 596, 113 S.Ct. 2786 125 L.Ed.2d 469 (1993). A court may not "select between competing versions of the evidence, or [] determine the veracity of the expert's conclusions at the admissibility stage." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022). "[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786. Peer review and publication are not a requirement of admissibility. *Daubert*, 509 US at 593.

1. Rod Englert

At the outset, Plaintiff's Objection (ECF# 162) does not make a conventional *Daubert* challenge about Mr. Englert. As it relates to blood spatter analysis, Plaintiff does not posit that Mr. Englert is unqualified to offer his opinions or appear as an expert, nor does she explain what, if any, fault exists in Mr. Englert's methodology. Plaintiff does not argue that Mr. Englert's testimony fails to rely on facts or data or that the blood spatter

analysis lacks reliable principles, reliably applied. Despite Plaintiff's failure to raise these issues, Defendants offer the following:

      a.  <u>Mr. Englert is sufficiently qualified</u>

Mr. Englert has served as a forensic expert in over 615 criminal and civil cases in jurisdictions all over the country. Mr. Englert has qualified and testified as an expert blood interpretation, ballistics and forensic science approximately 400 times. Because Mr. Englert's prior declaration was withdrawn, Defendants offer one here, as well as a CV, for purposes of this motion. For brevity sake, Defendants will not restate the contents of those documents here, suffice to say, Mr. Englert is qualified to testify as a reconstructionist and blood spatter expert.

      b.  <u>Mr. Englert's methodology is sufficiently reliable</u>

The use of crime scene photos to examine blood spatter to reach conclusions about movements or locations at a crime scene has been acceptable expert testimony in court cases for decades. *See e.g., Harrington v. Richter,* 562 U.S. 86, 96, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (noting appellant's reliance on statement from an expert in bloodstain analysis who relied on photographs to form an opinion regarding source of blood at a crime scene); *State v. Proctor,* 94 Or. App. 720, 767 P.2d 453 (1988) *rev. den.* 308 Or. 33, 774 P.2d 1108 (1989) (blood spatter analysis is so well-established as reliable and accepted that even non-conventional collection of evidence goes to weight, not admissibility); *Correll v. Secretary, Dept. of Corrections,* 932 F.Supp.2d 1257, 1295 (M.D.F. 2013); see also, Danny R. Veilleux, Annotation, *Admissibility in Criminal*

*Prosecution of Expert Opinion Evidence as to "Blood Spatter" Interpretation*, 9 A.L.R. 5th 369 (originally published in 1993) and cases cited therein. In sum, blood spatter examination using crime scene photos to reach conclusions has been accepted as reliable expert evidence for decades. Mr. Englert, himself, has testified about blood spatter analysis approximately 400 times.

c.  Live-person reconstruction

Defendants do not intend to elicit testimony about the live-person reconstruction. Thus, while Defendants do not agree with Plaintiff's analysis, this issue is moot.

d.  Opinions as to Scene

Defendants intend to limit Mr. Englert's testimony to his conclusions that, based on the blood spatter at the scene, Castillo III advanced toward Officer Bush and was shot near the front door of the residence and that there is no blood spatter evidence indicating that he was shot in the "hallway" area, located back, further into the house, as Plaintiff contends.

e.  Response to Plaintiff's Specific Contentions

Most of Plaintiff's contentions are mooted by the limited scope of Mr. Englert's proposed testimony. However, Plaintiff's contentions about Mr. Englert's opinions as to Castillo III's location when shot–based on blood spatter evidence–should be rejected.[1]

Again, Plaintiff does <u>not</u> challenge Mr. Englert's expertise or methodology in analyzing blood spatter evidence. Nor does Plaintiff assert that blood spatter analysis is

---

[1] These specific contentions are found on page 9 of Plaintiff's Objections (ECF# 162).

ADC:mom/W:\CLIENTS\BU20705\001\01207405.DOCX

unreliable. So those issues are not briefed here. Instead, Plaintiff's objections based entirely on her *ipse dixit* supposition that the testimony about blood spatter evidence is within grasp of the average lay person. She is incorrect.

The behavior of blood in flight, the difference between projected bloodstains, spatter stains, saturation stains, expired stains and bloodstain voids are not things within the knowledge of an average lay person. Evaluating a particular pool of blood and identifying whether it indicates the deposit was directional or was dropping straight down is not within the knowledge of the average lay person. As noted above, blood spatter experts have been testifying in courtrooms across the country on these matters for decades and can explain, for example, the importance of spiking patterns in satellite blood droplets. As just one example, Mr. Englert will be able to explain that certain blood pools/droplets documented on the linoleum floor at the front door, were deposited there at an almost 90-degree, vertical, angle. He can explain that such drops are only possible if the bleeding subject is standing above the location of the drops; this, of course, means that Castillo III had advanced so close to Officer Bush that he was literally standing over the small patch of linoleum at the front door while bleeding. This is highly probative and helpful evidence in this case because Plaintiff maintains that Castillo III never rushed the front door and, instead, stood 12-feet away virtually motionless when Officer Bush shot him. Blood spatter experts, like Mr. Englert and Mr. Kennedy can even determine which blood spatter was deposited in first, in relation to other blood spatter; a skill set clearly outside the knowledge of a lay person.

As the Supreme Court (*Daubert*) and the Ninth Circuit (*Primiano*) has instructed, Rule 701 provides "wide latitude" when it comes to experts' opinions, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.,* 509 U.S. at 596. Defendants do not contend that Mr. Englert's opinions are "shaky," but the Supreme Court's point is clear: when, as here, an expert's opinions meet the low threshold for admission, the jury is to have the opportunity to weigh that opinion subject to cross examination and contrary evidence offered by the opposing party. That is how Rule 701 operates in the adversarial system.

Because Plaintiff does not challenge the field of blood spatter analysis, nor Mr. Englert's credentials–only that blood spatter evidence is within the purview of average lay person–her challenge must be rejected. She is free to vigorously cross examine Mr. Englert.

2. Brian Kennedy

As with Mr. Englert, Plaintiff has not filed a *Daubert* objection based on Mr. Kennedy's credentials. Also, Plaintiff does not challenge the reliability or generally accepted science of blood spatter analysis. So those issues are not briefed here. She does raise several other contentions.

a. Plaintiff's Specific Contentions about Mr. Kennedy

First, Plaintiff objects to Mr. Kennedy "vouching" for Mr. Englert. As noted in Defendants' Response to Motion *in Limine* No. 19, Defendants agree that Mr. Kennedy

should not–and he will not–comment on anyone's credibility or truthfulness. He may, however, explain that he independently reviewed Mr. Englert's work and that it conforms to best practices within his field of expertise (blood spatter analysis) and that, upon his own independent examination of the evidence, he reached his own conclusions, which are the consistent with Mr. Englert's and also consistent with Officer Bush's interview/testimony.

Plaintiff seeks to invent from whole cloth a new prohibition on experts who "bolster" or corroborate another expert's conclusion. Plaintiff authoritatively announces that "vouching or bolstering is never a proper opinion for an expert" and cites *U.S. v. Barnard,* 490 F.2d 907, 913 (9th Cir. 1973). *Plaintiff's Objections,* (ECF# 162, at 11). To say that Plaintiff has stretched *Barnard* beyond its words is an understatement. *Barnard* held that a psychologist (and a psychiatrist) were not allowed to testify that, in their expert opinions, the criminal defendant lied. *Id.,* 913-14. That is not a novel or helpful holding; here, all agree that no expert in this trial will be permitted to opine about who has lied and who has told the truth. Plaintiff takes that rather mundane holding and inserts the word "bolster" into it, attempting to create a far-reaching doctrine that would have a nationwide impact on experts–they may "never" concur, or "bolster," another expert's conclusion. There is no support for this. Indeed, the word "bolster" does not appear in anywhere in the *Barnard* opinion. In plaintiff's world, a physician is "never" allowed to testify as a second or third opinion on a medical diagnosis or procedure because it would "bolster" her colleague's opinion, who is a fellow expert. Nor would an architect be able

to testify as an expert that he agrees with his fellow architect that a particular design is sound (or not sound, as the case may be). This is not the law. There is no prohibition against a party having more than one expert who reach the same opinions in order to prove their case.[2]

Second, Plaintiff charges that Mr. Kennedy does not "identify how any (or all) the evidence" that supports his conclusions. But Mr. Kennedy's report identifies with particularity what evidence he relied on. Kennedy Expert Report, pages 3 – 5. As just one example, Mr. Kennedy discusses why certain blood stains on the front door look different and travelled differently than usual blood (viscosity) because it was diluted with saliva. Expert Report, p. 9. He explains that he has documented this type of blood evidence throughout his career, that it is reproducible in laboratory experiments and that it means at the time the blood stain was deposited on the door the bleeding person (in this case, Arcadio Castillo III) had suffered an injury that perforated the lungs. This, among other evidence gleaned from the blood spatter analysis, places Castillo III at the front door at the bloodshed event (in this case, being shot). Yet, Plaintiff's entire theory of the case is that Castillo III never approached the front door, and stood innocently back, 12-feet away in a hallway where he was supposedly gunned down in cold blood. The ability of a blood spatter expert to explain that, based on the blood stains in the house, Castillo III was *right*

---

[2] Perhaps, in the extreme, there is an outer limit, triggering a cumulative evidence objection, where a party attempts to flood the courtroom with a high number of experts to all say the same thing, over and over again. Whether such a hypothetical objection would be valid or not, it is not applicable (nor has Plaintiff raised it) here. Here, there are only two experts offered to discuss their conclusions on blood spatter analysis.

8 – DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO EXPERT WITNESSES
ADC:mom/W:\CLIENTS\BU20705\001\01207405.DOCX

*there*, *at* the front door when at the moment of the bloodshed event (again, in this case at the moment of being shot) is highly probative evidence in this case. Castillo III was standing at the front door because he had just charged Officer Bush with a butcher knife. Pages 19 – 33 of Mr. Kennedy's report features scene photos, including arrows and other marks, used to illustrate the basis of his opinions.

Plaintiff is free to cross examine Mr. Kennedy about his opinions and the basis of them, but they meet the minimum threshold for admissibility and thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

3. <u>Edwards and Heider</u>

Like Plaintiff's position as to Englert and Kennedy, Plaintiff does <u>not</u> challenge Ms. Heider's or Mr. Edwards' credentials as ballistics experts. Nor does Plaintiff make any challenge to field of ballistics generally, nor as applied to this case. So these issues are not briefed here.

Plaintiff stipulates that four rounds were fired by Officer Bush, Defendants accept this stipulation and agree that it moots the need for ballistics expert testimony. Plaintiff stipulates that Arcadio Castillo III sustained two perforating and two penetrating gun shot wounds, Defendants accept the stipulation and agree that it moots the need for ballistics expert testimony.

Heider and Edwards opine that:

GSW #3, to Castillo's right upper arm with a re-entry trajectory laterally through his chest (right to left) has pseudo stippling surrounding the exterior of the entry wound. The bullet, EF-10, recovered from Castillo's left chest wall, did not expand as designed and is consistent with having struck an intermediary object prior to striking Castillo. Further, the pathologist described the entrance wound as "ragged" and inconsistent with a bullet in stable flight. In the limited universe of this OIS, the evidence supports that GSW #3 was the result of the bullet first striking the front door and then striking Castillo. The presence of pseudo stippling around GSW #3 is likely the result of wood debris from the front door striking Castillo's right upper arm. Therefore, Castillo must have been standing in close proximity to the front door when he sustained GSW #3 to have sustained the simultaneous pseudo stippling injuries to his right arm. This exact distance could not be determined.

Edwards and Heider, Expert Report at 19. Plaintiff does not move to exclude this opinion. In an abundance of caution, however, Defendants pause to state this opinion will be elicited at trial. An expert in ballistics is required to explain how/why the particular deformity of the bullet recovered from Castillo III's chest (labelled "GWS #3" by the pathologist) means that it must have passed through the front door, as well as how/why a bullet "in stable flight" would not create a ragged entry wound in a person. A ballistics expert is required to explain how bullets work when they impact wood, like the Castillo's front door, and why an outside-to-inside shot through the Castillo's front door, which is clearly documented, would create tiny pieces of wood debris that would project through the air and impact anyone standing very near the door at the moment of the shot. None of this is within the average lay person's knowledge.

As noted, Plaintiff does not move to exclude this opinion, for good reason: it is classic testimony requiring an expert in ballistics.

4. <u>Spencer Fomby</u>

As with Englert, Kennedy, Heider and Edwards, Plaintiff's objection to Mr. Fomby does not include any suggestion that he lacks expert qualifications or that his methodology lacks sufficient reliability. So those issues are not briefed here. Instead, his objections focus on the "embracing the ultimate issue of fact."

At the outset, FRE 704 forbids Plaintiff's objection, stating: "[a]n opinion is not objectionable just because it embraces an ultimate issue." Hence, whether or not Mr. Fomby's opinion touches on an ultimate fact is not a valid objection.

Plaintiff rewrites Mr. Fomby's opinion, changing it to make it subject to an objection. What Mr. Fomby opines is: "Officer Bush's use of deadly force was consistent with generally accepted police practices and SPD policy and training." Fomby Expert Report, at 6. Fomby does <u>not</u> opine–and will <u>not</u> testify–that Bush's conduct was "reasonable" or "objectively reasonable" or "not negligent."

Yet, Plaintiff complains that Mr. Fomby's opinion "in effect" (but not in words) has the impact of leading to the conclusion that Officer Bush should be vindicated. *Plaintiff's Objections*, ECF# 162, at 15. First, with any luck, every piece of Defendants' case will have that effect, that is the nature of the adversarial system. That is not a reason to exclude evidence, expert or otherwise. Second, as a practical matter, simply because a police officer acts within policy, training or consistent with best practices in their field,

does not preclude a jury finding that the officer's use of force was not objectively reasonable given the totality of the circumstances. In other words, Mr. Fomby's opinion does not, in any way, invade the province of the jury or even reach the ultimate legal question in this case.

Mr. Fomby is an expert in police practices (Plaintiff does not assert otherwise), he has reviewed the evidence in this case and it is proper for him to testify that, in his expert opinion, Officer Bush acted in a manner that was consistent with those standards. In addition to the civil rights claims, Plaintiff has stated a negligence claim against the City (by and through Officer Bush) so evidence that Officer Bush acted consistent with generally accepted best police practices is relevant and helpful. Merely testifying that an officer's conduct was consistent with generally accepted best practices for that industry– especially in a negligence case–is proper testimony. It is no different than a medical expert testifying that a surgeon's conduct complied with applicable standard of care within the medical field, which is not only allowed in a medical malpractice case, it is generally required. *See Burton v. Rogue Valley Med. Cent.,* 122 Or. App. 22, 26, 856 P.2d 639, rev. den. 318 Or. 24, 862 P.2d 1304 (1993). If Plaintiff's application of expert testimony was correct, no expert would be ever be allowed to testify about whether an act or omission  complied with the applicable standard of care in any professional negligence case. That is clearly not correct as such testimony is routinely received in medical malpractice, engineering negligence, construction defect, and similar negligence cases. Experts are allowed to testify about the standard of care in a given field and allowed to

opine about whether a defendant complied with that standard of care. A contrary ruling would turn every professional negligence case on its head.

To the extent Plaintiff argues that Mr. Fomby's opinion is based on the inherent conclusion that Castillo III charged the officer–a conclusion that she contests–such issues go to the weight, not the admissibility of the opinion, because, again, Plaintiff does not challenge Mr. Fomby's expertise, credentials nor his methodology. Plaintiff will be free to cross examine Mr. Fomby and if he has made a critical assumption that exposes or weakens his opinion, able counsel will surely draw that out of him in front of the jury. This is as it should be and comports with decades of law on this point. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")

Finally, it is difficult to grasp Plaintiff's "not helpful" argument; does she seriously contend that the average lay person already knows the general best practices in the field of police work, as it relates to confronting an unpredictable person armed with a knife who is within striking distance of an innocent person? Clearly not. Which is why Mr. Fomby's testimony is helpful.

Dated this 27th day of January, 2025.

HELTZEL WILLIAMS PC

s/ Andrew D. Campbell
Andrew D. Campbell, OSB #022647
Attorney for Defendants
Email: andrew@heltzel.com

## CERTIFICATE OF SERVICE

I hereby certify that I served the attached **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO DEFENDANTS' EXPERT WITNESSES** on:

James M. Healy
Ronnie Lynn Sayer
The Gatti Law Firm
235 Front Street SE, Suite 200
Salem, OR 97301
Email: jhealy@gattilaw.com
rsayer@gattilaw.com
Attorney for Plaintiff

Daniel B. Atchison
City of Salem, Legal Dept
555 Liberty Street SE
Salem, OR 97301
Email: datchison@cityofsalem.net
Attorney for Defendants

☐ By mailing to said attorney(s) a full and correct copy therefor, contained in a sealed envelope, with postage paid, addressed to said attorney(s) as stated above and deposited in the United States Post Office at Salem, Oregon.

☐ By hand delivering to said attorney(s) a true copy thereof.

☑ By emailing to said attorney(s) at their above listed email address(es) a true copy thereof.

☑ By electronic filing with the District Court's CM/ECF system.  The CM/ECF system generated Notice of Electronic Filing constitutes proof of service upon a Filing User in accordance with Fed. R. Civ. P. 5(d).

Dated this 27th day of January, 2025.

HELTZEL WILLIAMS PC


s/ Andrew D. Campbell
Andrew D. Campbell, OSB #022647
Attorney for Defendants
PO Box 1048
Salem, OR 97308
Phone: (503) 585-4422
Fax: (503) 370-4302
Email: Andrew@heltzel.com